CHATTANOOGA COKE & GAS CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8317. Promulgated June 22, 1928.

*Jesse I. Miller, Esq.*, for the petitioner.
*J. Harry Byrne, Esq.*, for the respondent.

OPINION.

MORRIS: The first issue urged by the petitioner for consideration is whether the *collection* of the proposed deficiency is barred by operation of the statute of limitations.

The various provisions of the Revenue Acts of 1921, 1924, and 1926, which are pertinent to the issue raised, are as follows:

Section 250 (d) of the Revenue Act of 1921:

The amount of income, excess-profits, or war-profits taxes * * * due under any return made under this Act for prior taxable years or under prior income, excess-profits, or war-profits tax Acts, * * * shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; and no suit or proceeding for the collection of any such taxes due under this Act or under prior income, excess-profits, or war-profits tax Acts, * * * shall be begun, after the expiration of five years after the date when such return was filed, but this shall not affect suits or proceedings begun at the time of the passage of this Act: * * *

Section 277 (a) (2) of the Revenue Act of 1924:

The amount of income, excess-profits, and war-profits taxes imposed by the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5, 1909, the Act entitled "An Act to reduce tariff duties and to provide revenue for the Government, and for other purposes," approved October 3, 1913, the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period.

Section 278 (c) of the Revenue Act of 1924:

Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon.

Section 278 (d) of the Revenue Act of 1924:

Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this Act shall be construed as preventing the beginning, without

assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made.

Section 278 (d) of the Revenue Act of 1926:

Where the assessment of any income, excess-profits, or war-profits tax imposed by this title or by prior Act of Congress has been made (whether before or after the enactment of this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer.

The facts with respect to this issue are that the petitioner filed its income and profits-tax return for the year 1919 on or before March 15, 1920; that thereafter, to wit, on or about January 26, 1924, it entered into a consent in writing extending the time prescribed by law within which the *assessment* for the year 1919 might be made until December 31, 1925, at which time the period for the assessment of such taxes should expire " except that if a notice of a deficiency in tax be sent to said taxpayer by registered mail before said date, and (1) no appeal is filed therefrom with the United States Board of Tax Appeals then said date shall be extended sixty days, or (2) if an appeal is filed with said Board, then said date shall be extended by the number of days between the date of mailing of said notice and the date of final decision by said Board." The deficiency notice was mailed to the petitioner on August 24, 1925. Thereafter, on October 22, 1925, the petitioner filed its appeal with this Board from the findings set forth in the respondent's deficiency notice, which extended the period for making *assessment* by the number of days between the date of mailing the deficiency notice and the date of our final decision.

The facts and circumstances in the instant case are practically identical with those considered and disposed of in *Sunshine Cloak & Suit Co.*, 10 B. T. A. 971. In that case the fiscal year ended November 30, 1918, was under consideration. It appears from the record there that the taxpayer filed its return on June 15, 1919; that on or about February 12, 1924, it filed a consent in writing to extend the period within which the " determination, assessment and collection " of those taxes might be made for one year; that on January 19, 1925, it filed another consent in writing postponing " assessment " of those taxes until December 31, 1925; that a further consent was entered into on March 3, 1926, providing for a further postponement of " assessment " of its taxes until six months after final decision of this Board. The respondent in that case mailed a deficiency notice to the petitioner on December 12, 1925, and on February 9, 1926, said petitioner filed its appeal from that deficiency notice with this Board.

The Board in that case, after finding that the period within which the *assessment* could legally be made had not expired and further that the statute expressly extended the time for collection after the assessment has been made, held that the statute of limitations had not barred the *collection* of the tax, notwithstanding the consents in writing there, as here, extended the period within which the *assessment* and not the *collection* should be made.

Under the authority of *Sunshine Cloak & Suit Co.*, *supra*, we are of the opinion that the collection of the deficiency herein is not barred by operation of the statute of limitations.

Before proceeding with the major question set forth in the second allegation of error herein, we must first dispose of a preliminary issue that has been raised by the pleadings. Since the petitioner's statement of the error committed by the respondent, when considered in the light of the proposition of law laid down in its petition as controlling this issue, seems to confuse and confound the issue attempted to be raised, we deem it advisable to reconcile the pleadings and thus determine the true issue to be considered.

The petitioner's statement of the allegation of error reads:

(a) The reversal by the Income Tax Unit of a Departmental ruling dated August 19, 1921, requiring consolidated returns to be filed * * *.

The proposition of law stated by the petitioner as supporting this issue is:

(a) As a matter of law the present Commissioner is without authority to reverse the action of his predecessor in ordering the consolidation herein referred to.

If the above allegation of error correctly states the issue, then the question presented for consideration is whether Commissioner Blair was justified, under the law, in reversing a prior ruling made by him concerning the same taxable year, if, on the other hand, the proposition of law above stated is to be considered as properly defining the issue intended to be raised by the petitioner, then the question is whether Commissioner Blair was empowered under the law to reverse the previous action of his predecessor, Commissioner Williams.

The facts are that Commissioner Williams found from the evidence presented to him with respect to the years 1917 and 1918, that the petitioner and the parent company were affiliated within the purview of the law and the regulations for those years. Commissioner Blair, who took office on May 27, 1921, communicated a ruling of his office to the parent company under date of August 19, 1921, that the parent company and the petitioner herein were affiliated within the meaning of the law and the regulations for the years 1919 and 1920, which ruling he later reversed as to 1919 and found that the parent company and the petitioner were not so affiliated for that year, and he so informed the petitioner.

Therefore, since it appears that Commissioner Williams made no ruling with respect to the year 1919, which is the one here in controversy, it will not be necessary for us to determine whether Commissioner Blair would have been justified in reversing such a ruling, had one been made. See, however, *Mather Paper Co.*, 3 B. T. A. 1; also see *George A. Fink Co.*, 5 B. T. A. 76.

The question of whether the respondent was empowered under the law to reverse a prior ruling made by him concerning the same taxable year, has been heretofore considered and disposed of by the Board in *Dallas Brass & Copper Co.*, 3 B. T. A. 856. We find, therefore, nothing to prohibit the respondent from reversing a prior ruling made by him. Counsel for the petitioner relies strongly on section 1107 of the Revenue Act of 1926, but in our opinion that section has no bearing on the question herein.

Having concluded that the respondent acted within his authority in reversing a former ruling made by him with respect to 1919 we will consider now whether the conclusion so reached, insofar as it affected the petitioner's affiliation with the parent company, is supported by the evidence as found in the record.

Section 240 (b) of the Revenue Act of 1918 provides:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

The petitioner's counsel cites *Mahoning Coal Railroad Co.*, 4 B. T. A. 923, and he says that case "in principle is on all fours with the instant appeal." While it is true that the principles laid down by the Board in the earlier affiliation cases are controlling, it is equally true, and well established, that affiliations must be determined and decided in the light of the facts found to exist in each individual case. *Old Colony Railroad Co.*, 1 B. T. A. 1067; *Isse Koch & Co., Inc.*, 1 B. T. A. 624; *Huntington & Clearfield Telephone Co.*, 1 B. T. A. 731; *Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666; *Mahoning Coal Railroad Co.*, 4 B. T. A. 923; *D. S. Brandon*, 10 B. T. A. 1118.

Although mere mathematical calculations are not the controlling factors in determining whether two or more corporations are affiliated within the meaning of the law, *Stanley Insulating Co.*, 2 B. T. A. 967, the test of the statute is ownership or control of substantially all the stock of the corporations in question, *American Auto Trimming Co.*, 6 B. T. A. 1007, consequently that requirement must be found to have been complied with and all facts evidencing such ownership or control considered.

The testimony reveals that the entire capital stock of the parent company was issued to the bankers at or about the time of its organization, but the record is practically silent as to how the stock of that company was held during the year 1919. Therefore, it must be apparent that whatever ownership or control of capital stock existed must be found in the evidence relating to the outstanding stock of the petitioner for 1919.

The bankers received 10,200 shares of preferred and 9,720 shares of common stocks of the petitioner in 1917 when the reorganization, and change in capital structure took place. On January 1, 1919, there were 9,720 shares of common stock of the petitioner issued and outstanding (with only insignificant changes during the year 1919) of which 1,500 shares or approximately 15½ per cent were recorded in the name of the parent company, 6,388½ shares or approximately 65¾ per cent in the names of the bankers, their employees and attorney and client of one of said bankers. The remaining 1,831½ shares of common stock of the petitioner, or approximately 18¾ per cent, were owned by stockholders scattered throughout the various cities of the United States and Canada.

It appears that 7,082 shares of the 10,200 shares of preferred stock of the petitioner issued and outstanding on January 1, 1919, were owned by scattered interests as in the case of a portion of the common stock, and that only 3,118 shares were owned by the bankers group. The evidence does not disclose whether the preferred stock had voting rights or not. However, since it appears from the record that the same conclusion is inevitable in any event, we shall proceed with our consideration of the case on the theory that it was nonvoting.

Adopting the most favorable attitude, and even assuming for the sake of argument that the bankers did control the stock of their employees and associates, we are still unable to see wherein the requirements of the statute have been complied with. The statute permits an affiliation "if one corporation owns directly or controls  *  *  * substantially all of the stock" of another corporation. Therefore, it will be seen that in order to meet this test of the statute the parent company here, and not the bankers, must be shown to own or control substantially all of the stock of the petitioner. The evidence shows that the parent company owned approximately 15½ per cent. Petitioner's counsel has gone to great length in proving that the common stock of the petitioner was owned or controlled by the bankers, not by the parent company. Such proof does not comply with the first requirement of the statute. The statute also lays down a second test where substantially all of the stock of two or more corporations is owned or controlled by the same interests. As we have already

said, none of the stock of the parent company is shown to have been owned or controlled during the taxable year by the bankers or their alleged nominees, consequently, the instant case can not be said to fall within that test.

It is true that these corporations enjoy many benefits because of their close relationship, and that there are many intercompany transactions which are no doubt highly advantageous to both, but as we have said in *Greenville Coaling & Export Corporation,* 4 B. T. A. 183, " The fact of intercompany relations, or the absence of them, without the necessary stock ownership or control as provided in the statute, is not sufficient to permit or require affiliation."

From what we have already said the distinction between the instant case and *Mahoning Coal Railroad Co., supra,* must be too apparent to warrant further discussion.

We are, therefore, of the opinion that the provisions of section 240 (b) of the Revenue Act of 1918 have not been satisfied and that the respondent was correct in holding that the petitioner and the parent company were not affiliated for the year 1919.

*Judgment will be entered for the respondent.*